IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**ROBYN GODDARD,**
    **Plaintiff,**

v.

Case No. 2:03-CV-525
JUDGE EDMUND A. SARGUS, JR.
Magistrate Judge Terence P. Kemp

**ABBOTT LABORATORIES,**
    **Defendant.**

## OPINION AND ORDER

This matter is before the Court for consideration of the Defendant's Motion for Summary Judgment (Doc. # 25) and the Plaintiff's Motion to Amend her Complaint (Doc. # 27). For the reasons that follow, the Plaintiff's motion is denied and the Defendant's motion is granted.

### I.

Plaintiff, Robyn Goddard ["Plaintiff"], brings this action against Abbott Laboratories, Inc. ["Abbott"] claiming that Abbott wrongfully terminated her employment shortly after she had accepted an offer. Plaintiff is a resident of Ohio and Abbott is a Delaware corporation with its principal place of business in the State of Illinois. Plaintiff's claims are for breach of contract and promissory estoppel under Ohio law. Plaintiff invokes this Court's diversity jurisdiction, 28 U.S.C. § 1332.

Plaintiff, who holds an Associate degree in General Science and a Bachelor's degree in Business Administration, began employment in the pharmaceutical sales industry in 1985.

(*Deposition of Robyn Goddard*, hereinafter "*Pl. Depo.*" at 14-15). Plaintiff left the industry in 1988 to stay at home with her children. At that time, Plaintiff was living in the State of New York. Plaintiff returned to work in the pharmaceutical industry from 1997 to 1999, with jobs in West Virginia and Virginia. (*Id.* at 24, 31). Plaintiff then left the industry to relocate to Ohio so that she could care for her elderly mother. (*Id.* at 31). Plaintiff and her husband then began a software company for which Plaintiff performed marketing duties. (*Id.* at 38).

In early 2002, Plaintiff attended a job fair in Pittsburgh, Pennsylvania. (*Id.* at 62). A number of pharmaceutical companies were represented at the fair. Plaintiff presented her resume to a company called Pharmacia. She had a brief interview at the fair and was told that she would be called at some point for further interviewing. (*Id.* at 62-63). Plaintiff interviewed with Pharmacia sometime in late January or early February 2002, in Pittsburgh. (*Id.* at 63-64). Sometime in March 2002, Plaintiff interviewed a second time with Pharmacia. (*Id.* at 67). In early April 2002, Plaintiff accepted an offer of employment. (*Id.*). Plaintiff's employment commenced on April 22, 2002. (*Id.* at 68-69). Plaintiff attended two weeks of training in Cincinnati, Ohio. (*Id.* at 69). After the training period, Plaintiff underwent further training by traveling with other sales representatives. (*Id.* at 73). Plaintiff never actually performed independent sales duties (*Id.* at 74), but received wages beginning April 22, 2002.

On March 31, 2002, Plaintiff sent a letter and resume, via the internet, to Abbott expressing interest in the position of Account Manager in Wheeling, West Virginia. (Exhibit 2 attached to *Pl. Depo.*). Plaintiff testified on deposition that she pursued this position because it was a better location and offered a better salary for her. (*Id.* at 80). Shortly after she sent a resume to Abbott, Plaintiff received a telephone call to schedule an interview. (*Id.* at 85-86). On

2

May 8, 2002, Plaintiff interviewed with Abbott. (*Id.* at 97). According to Plaintiff, she told Patrick McCarty, of Abbott, that she had "an offer from Pharmacia for a position." (*Id.* at 99). McCarty presented Plaintiff an application to complete and allegedly told her that she would be contacted for a further interview. (*Id.* at 100-01). Plaintiff completed the application on either May 9 or 10, 2002. (*Id.* at 104, 108). Plaintiff did not list Pharmacia as an employer on the application. (*Id.* at 109). On May 16, Mr. McCarty called Plaintiff. She returned the call the following day and set up a meeting on May 24, 2002 to discuss the Abbott position. (*Id.* at 125). According to Plaintiff, McCarty told her on May 24, that she would be "the second Robyn that he hired from Pharmacia." (*Id.*). Plaintiff allegedly expressed concern to him about when an employment decision would be made since she was participating in training with Pharmacia. (*Id.* at 129).

On May 30, 2002, Plaintiff met with Mr. Wes Juda, McCarty's supervisor. (*Id.* at 130). Plaintiff claims that she disclosed that she had "another opportunity" with Pharmacia. (*Id.* at 133). McCarty allegedly offered Plaintiff a position with Abbott later that evening. (*Id.* at 133-34). On June 3, 2002, Ms. Monica Girard, of Abbott, told Plaintiff there was no offer until she was notified of a salary range. On June 6, 2002, Girard requested Plaintiff's resume. (*Id.* at 138). Plaintiff then contacted McCarty to ask whether she should disclose her position with Pharmacia. (*Id.*). McCarty allegedly told Plaintiff not to worry about it because she would resign from her position with Pharmacia anyway. (*Id.* at 138-39). On June 7, 2002, Plaintiff was informed of a salary and was given a start date of June 24, 2002. (*Id.* at 141, 149). Plaintiff resigned from her position at Pharmacia on June 17, 2002. (*Complaint* at ¶ 7).

Sometime after June 7, McCarty called Plaintiff to inform her that her start date would

3

likely be postponed until July 1 or July 8. (*Pl. Depo.* at 151). On June 26, 2002, Plaintiff received a call from Eliza Rosado, of Abbott, inquiring as to why Plaintiff did not disclose her position with Pharmacia on her resume. (*Id.* at 153). On June 28, 2002, McCarty called Plaintiff and told her that Abbott was rescinding its offer of employment. (*Id.* at 157-58). According to the Defendant, the offer was rescinded because Plaintiff failed to disclose material information, namely her position with Pharmacia, in her employment application.

Plaintiff filed the instant action on June 10, 2003, alleging claims for breach of contract and promissory estoppel. On November 1, 2004, after Defendant filed its Motion for Summary Judgment, Plaintiff filed a Motion for Leave to Amend her Complaint to add a claim for negligent misrepresentation. In the tendered Amended Complaint Plaintiff alleges that Defendant "failed to exercise due care or competence in interviewing and luring [her] away from her job with Pharmacia, and supplied false statements to her that she had been chosen for a job at Abbott upon which she justifiably relied in resigning a pre-existing lucrative position with Pharmacia." (*Proposed Am. Compl.* at ¶ 18). Defendant opposes the proposed amendment on the basis that it will cause undue prejudice to Defendant and on the basis of futility.

## II.

### A. Defendant's Motion for Summary Judgment.

#### Standard

The procedure for considering whether summary judgment is appropriate, is found in Fed. R. Civ. P. 56(c); this section provides:

The judgment sought shall be rendered forthwith if the pleadings, depositions,

4

> answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

The evidence must be viewed in the light most favorable to the nonmoving party. *Adickes v. Kress & Co.*, 398 U.S. 144, 158-59 (1970). Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also, Matsushita Electronic Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986).

The United States Court of Appeals for the Sixth Circuit has recognized that *Liberty Lobby, Celotex,* and *Matsushita* have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1476 (6th Cir. 1989). The court in *Street* identifies a number of important principles in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. *Id.* at 1479.

In addition, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Id.* (quoting *Liberty Lobby*, 477 U.S. at 257). The nonmoving party must adduce more than a mere scintilla of evidence in order to overcome the summary judgment motion. *Id.*

It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" *Id.* (quoting *Matsushita*, 475 U.S. at 586). Moreover, "[t]he trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* That is, the nonmoving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact.

### Analysis

#### 1. Plaintiff's Breach of Contract Claim

The Defendant moves for summary judgment on Plaintiff's claim for breach of contract. In Ohio, an employment contract is presumed to be at-will, meaning that it is able to be terminated by either side for any reason not contrary to law, unless there are "facts and circumstances which indicate that the agreement is for a specific term." *Henkel v. Educational Research Council*, 45 Ohio St.2d 249 (1976) (syllabus). There exists "a strong presumption in favor of a contract terminable at will unless the terms of the contract or other circumstances clearly manifest the parties' intent to bind each other." *Id.* at 255.

There are limited exceptions to the at-will employment doctrine, including violation of public policy, express or implied contract, and promissory estoppel. *Mers v. Dispatch Printing*, 19 Ohio St.3d 100, 103 (1985). In this case, Plaintiff argues that two of these exceptions apply; breach of express contract for a specific duration and promissory estoppel. The Court considers the breach of contract claim first.

Plaintiff's contract claim is premised upon the June 10, 2002 written offer of employment

6

from Abbott. According to Plaintiff, the letter constitutes a contract of employment for a specific duration because it references a position with an annual salary of $57,000 and the proviso that future salary increases are to be based on merit, according to overall performance. Plaintiff argues that this offer "can be reasonably construed to create an employment contract by its own terms of at least one year and perhaps longer . . . ." (*Pl. Memorandum contra* at 19).

The Defendant disagrees, arguing that the letter does not constitute a promise of employment for a specific term. The Defendant's argument is supported by Ohio law. In the absence of a term outlining the duration of employment, mere reference to an annual salary and periodic pay increases are not sufficient to change the nature of the at-will employment relationship. *Henkle v. Education Research Council*, 45 Ohio St.2d 249 (1976); *Carriker v. American Postal Workers Union*, No. 13900, 1993 WL 385807 (Ohio App. Montgomery Co. Sept. 30, 1993).

In addition, Plaintiff's own deposition testimony negates any argument that she was offered a position at Abbott for a specific duration. When asked if "anybody at Abbott ever [told Plaintiff] that this [employment] was for a specific period of time," Plaintiff responded "[n]o." (*Pl. Depo.* at 159). Plaintiff was also asked: "So as far as you know, this job was for an indefinite period of time?" and Plaintiff responded "Yes." (*Id.*).

In sum, the Court finds no genuine issues of material fact as to the duration of the employment offered Plaintiff by Abbott. The fact that Abbott disclosed an annual salary and the possibility of future periodic pay increases to Plaintiff does not alter the general presumption that this was an employment-at-will relationship. For these reasons, the Court finds that Defendant is entitled to summary judgment on Plaintiff's claim that the termination amounts to a breach of

7

contract.

### 2. Plaintiff's Promissory Estoppel Claim

The Defendant also moves for summary judgment on Plaintiff's claim for promissory estoppel. As stated above, promissory estoppel is an exception to the employment-at-will doctrine. In *Mers*, the Ohio Supreme Court held that "[a]n additional limit on an employer's right to discharge occurs where representations or promises have been made to the employee which fall within the doctrine of promissory estoppel." 19 Ohio St.3d at 104. The court went on to state:

> [W]here appropriate, the doctrine of promissory estoppel is applicable and binding to oral employment-at-will agreements when a promise which the employer should reasonably expect to induce action or forbearance on the part of the employee does induce such action or forbearance, if injustice can be avoided only by enforcement of the promise.
>
> The test in such case is whether the employer should have reasonably expected its representation to be relied upon by its employee and, if so, whether the expected action or forbearance actually resulted and was detrimental to the employee.

*Id.* at 105.

In this case, Plaintiff's claim for promissory estoppel is premised on certain events during the interview process which allegedly caused her to believe that her employment at Abbott was assured. In particular, Plaintiff points to the comment of Patrick McCarty that Plaintiff would be the second woman named Robyn that he hired from Pharmacia. Plaintiff also claims that she was offered the job at Abbott despite the fact that she had earlier disclosed to McCarty that she had an "offer" from Pharmacia and told McCarty's supervisor, Wes Juda, that she had "another opportunity" with Pharmacia. (*Pl. Depo.* at 125, 133). McCarty testified on deposition that

8

Plaintiff never disclosed her employment with Pharmacia to him. (*Deposition of Patrick McCarty* at 40). According to McCarty, Plaintiff simply informed him that she had an offer from Pharmacia. After Abbott requested Plaintiff's resume, she expressed concern to McCarty as to whether she should disclose her position with Pharmacia, as the employment was not listed on Plaintiff's resume. According to Plaintiff, McCarty allegedly said that she should not worry because she would resign from employment with Pharmacia. (*Id.* at 138-39). Shortly thereafter, Plaintiff was offered the position at Abbott. The position with Abbott was then terminated based on Plaintiff's failure to disclose material information regarding her employment.

At the outset, the Court observes that there are no genuine issues as to any of the foregoing facts. The question is therefore one of law as to whether the doctrine of promissory estoppel applies to the instant factual situation. The Court concludes that it does not[1].

Promissory estoppel is a quasi-contractual or equitable doctrine. *Karnes v. Doctors Hospital*, 51 Ohio St.3d 139, 142 (1990). As a result, the Court finds that the doctrine of unclean hands applies as a defense to Plaintiff's promissory estoppel claim. The doctrine is based on the maxim that "he who comes into equity must come with clean hands." *Precision Instrument Mfg. Co. v. Automotive Maintenance Machinery Co.*, 324 U.S. 806, 814 (1945). In other words, the doctrine operates to "close[ ] the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief . . . ." *Id.*

The uncontroverted evidence in this case as to the chronology of events which transpired during Plaintiff's interview process causes the Court to conclude that Plaintiff cannot pursue an

---

[1] The Court notes Defendant's argument that the doctrine of promissory estoppel does not apply because there is a written contract for at-will employment in this case. For the reasons stated *infra*, the Court need not address this argument.

9

equitable claim for promissory estoppel. Plaintiff's characterization to Abbott of her relationship with Pharmacia was quite misleading. On deposition, Plaintiff testified that she disclosed to McCarty that she had an "offer" from Pharmacia and she disclosed to Juda that she had "another opportunity" with Pharmacia. In fact, Plaintiff was already employed with Pharmacia at the time she made these comments to McCarty and Juda. In addition, when Plaintiff was asked to submit a resume to Abbott, she failed to disclose her employment with Pharmacia. Given this conduct, the Court concludes that Plaintiff does not present herself to this Court with clean hands. For this reason, the Defendant is entitled to summary judgment on Plaintiff's promissory estoppel claim.

### B. Motion for Leave to Amend.

#### Standard

Fed. R. Civ. P. 15(a) permits a party to amend the complaint after a responsive pleading has been filed only by leave of court. The rule provides that leave is to be "freely granted when justice so requires." In *Foman v. Davis*, 371 U.S. 178, 182 (1962) the Supreme Court stated:

> If the underlying facts or circumstances relied upon by plaintiff may be a proper subject of relief, he [or she] ought to be afforded an opportunity to test his [or her] claim on the merits. In the absence of any apparent or declared reason - - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of the amendment, etc. - - the leave sought should be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court . . . .

The Sixth Circuit has held that delay alone is not a basis upon which to deny a motion for leave to amend. *Dana Corp. v. Blue Cross & Blue Shield Mutual*, 900 F.2d 882, 888 (6th Cir.

1990). Rather, significant prejudice must be shown. *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir. 1986). In *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999), the court found significant prejudice in allowing amendment when the discovery and dispositive motions deadlines had passed and a motion for summary judgment was pending. Nevertheless, if the prejudice is able to be remedied in some manner, such as by assessing the moving party the costs of duplicative discovery, amendment may be permitted. *Janikowski v. Bendix Corp.*, 823 F.2d 945, 952 (6th Cir. 1987).

In addition to prejudice, futility of the amendment may provide a basis for denial of a motion to amend the complaint. *See Neighborhood Dev. Corp. v. Advisory Council on Historic Preservation,* 632 F.2d 21, 23 (6th Cir. 1980). If there is no set of facts under which a valid and sufficient claim could be proven, the amendment may be denied as futile. *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 518 (6th Cir. 2001).

### Analysis

In this case, the Motion for Leave to Amend is presented at an advanced stage of the action. Defendant's argument of prejudice therefore carries some weight. In addition, the Court is of the view that any claim for negligent misrepresentation, on the facts alleged, would be futile. The elements of the claim require, *inter alia*, a showing of justifiable reliance[2]. Given the

---

[2] A claim for negligent misrepresentation involves "[o]ne who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information." *Delman v. City of Cleveland Heights*, 41 Ohio St.3d 1, 4 (1989), quoting Restatement fo the Law 2d, Torts (1965), § 552(1).

fact that Plaintiff provided misleading information to the Defendant regarding her employment status with Pharmacia, the Court concludes that Plaintiff could not succeed in satisfying this element. For these reasons, Plaintiff's Motion for Leave to Amend is denied.

### III.

In light of the foregoing, the **Plaintiff's Motion for Leave to Amend her Complaint (Doc. #27)** is **DENIED**. The Defendant's Motion for Summary Judgment **(Doc. # 25)** is **GRANTED**.

The Clerk is **DIRECTED** to enter Judgment in favor of the Defendant. This action is **DISMISSED**.

**IT IS SO ORDERED.**

6-10-2005
DATE

EDMUND A. SARGUS, JR.
UNITED STATES DISTRICT JUDGE